# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| KYOCERA AVX Components Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 21-2146C<br>(Filed: March 28, 2023) |
| THE UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) ) | |

George B. Abney, Alston & Bird LLP, Atlanta, Ga., for Plaintiffs.

Jason Bergmann, Tax Division, U.S. Department of Justice, Washington, D.C., with whom were David I. Pincus, Chief, Court of Federal Claims Section, and David A. Hubbert, Deputy Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Chief Judge.**

  KYOCERA AVX Components Corporation ("AVX") brought this action seeking tax refunds for the tax years ending March 31, 2007, and March 31, 2008. The Internal Revenue Service ("IRS") withheld some $1.34 million from tax refunds it provided AVX in 2020 as offsets against excess overpayment interest it had paid AVX in 2017. AVX contends that the offsets were illegal under Pacific Gas & Electric v. United States (PG&E), 417 F.3d 1375 (Fed. Cir. 2005), because they were effected after the expiration of the two-year statute of limitations set forth in 26 U.S.C. § 7405 and 26 U.S.C. § 6532(b). See PG&E, 417 F.3d at 1384 (holding that "the [IRS's] ability to offset erroneously paid statutory interest against a taxpayer's refund claim . . . is subject to the same statute of limitations that applies to suits by the United States to recover erroneous refunds of taxes or erroneous payments of interest on refunds").

  The United States responds that this case is factually distinguishable from PG&E. It further contends that, even if PG&E is controlling, the court of appeals did not resolve in that case whether the common-law right of recoupment—which is not subject to statutes of limitations—provided the IRS with an alternative basis for retaining portions of AVX's refunds equal to the amount of the excessive interest payments.

Currently before the Court are the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, the Court agrees with AVX that this case is on all fours with PG&E and also that the common-law right of recoupment is inapplicable. AVX's motion is therefore **GRANTED**, and the government's cross-motion is **DENIED**.

## BACKGROUND[1]

### I.     2017 Refund Payments

In 2016, AVX filed refund claims with the IRS for tax years 2007 and 2008. Compl. ¶ 9, ECF No. 2.[2] AVX requested the refunds on the basis of net operating losses incurred in tax year 2014 and carried back to 2007 and prior years, and on the basis of certain carryforward tax credits. Id.; see also id. Ex. 1 at 2–3 (2007 IRS Form 1120x), ECF No. 2-1; id. Ex. 2 at 2–3 (2008 IRS Form 1120x), ECF No. 2-2.[3] AVX claimed it was due a refund of more than $13 million for tax year 2007. Compl. ¶ 9. It claimed a $5.6 million refund for tax year 2008. Id.

In 2017, the IRS notified AVX that it had decided to allow some portions of the refund claims for tax years 2007 and 2008. Id. ¶ 11; see also id. Ex. 3 at 2–3 (IRS Letter 569), ECF No. 2-3. It issued refund payments to AVX in 2017 for the allowed amounts. Compl. ¶ 13; Answer ¶ 13, ECF No. 15. In addition, the IRS provided AVX with almost $1.8 million in overpayment interest for tax years 2007 and 2008. Answer ¶ 13; see also Compl. ¶ 13; App. to Def.'s Resp. to Pl.'s Mot. for J. on Pleadings & Def.'s Cross-Mot. for J. on Pleadings ("Def.'s Cross-Mot. App.") at 4, 8 (Tax Year 2007 & 2008 IRS Account Transcripts), ECF No. 26-1.[4]

---

[1] The facts in this section, which are undisputed, are taken from the parties' pleadings, documents incorporated into those pleadings by reference, appendices to the government's motions, and statutes subject to judicial notice. See T.H.R. Enters., Inc. v. United States, 160 Fed. Cl. 236, 239 (2022) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)).

[2] AVX filed its complaint and attached exhibits under seal. See Compl., ECF No. 1; id. Exs. 1–4, ECF Nos. 1-1 to 1-4; see also Pl.'s Mot. to File Compl. Under Seal, ECF No. 3; Order, ECF No. 7. At the same time, AVX proposed redactions to the complaint and exhibits, see Compl., ECF No. 2; id. Exs. 1–4, ECF Nos. 2-1 to 2-4, which the Court ordered to be unsealed, Order, ECF No. 12; see also Def.'s Mot. to Unseal, ECF No. 9. In this opinion, the Court will cite the redacted, publicly available complaint and exhibits.

[3] The Court refers to the page numbers generated by its electronic filing system when citing the exhibits attached to AVX's complaint.

[4] Overpayment interest accrues "upon any overpayment" of tax "from the date of the overpayment." 26 U.S.C. § 6611; see also 26 U.S.C. § 6621(a)(1) (establishing the interest rate on overpayments).

Overall, and as reflected in the table that follows, the IRS made payments to AVX in 2017 totaling $10,550,798.21 for 2007 and $3,792,619.75 for 2008:

|  | Tax Year 2007 | Tax Year 2008 |
|---|---|---|
| AVX's Refund Claims | $13,087,535.00 | $5,606,201.00 |
| Allowed Amounts | $9,052,954.00 | $3,412,664.00 |
| Overpayment Interest | $1,424,582.67 | $351,775.51 |
| Deficiency Interest | $73,261.54 | $28,180.24 |
| Total 2017 Refund | $10,550,798.21 | $3,792,619.75 |

Answer ¶ 13; Compl. ¶ 13; Compl. Ex. 1 at 2–3; Compl. Ex. 2 at 2–3; Compl. Ex. 3 at 6; Def.'s Cross-Mot. App. at 4, 8.

## II.   Offsets Applied Against Additional Refunds in 2020

AVX continued to pursue the allowance of more of its refund claims for tax years 2007 and 2008 which, as noted, it based on certain tax credits. See Compl. ¶ 14; see also id. Ex. 1 at 2; id. Ex. 2 at 2; id. Ex. 3 at 7. On October 23, 2019, the IRS agreed to allow an additional $2.4 million refund for 2007 and $2.2 million for 2008. Compl. ¶ 14;[5] see also id. Ex. 4 (IRS Form 870-AD) at 2–3, ECF No. 23.[6]

In the course of preparing to make these additional refund payments, however, the IRS discovered that it had erred when calculating the overpayment interest due AVX in connection with the refund payments it provided in 2017. Answer ¶¶ 13, 35. As a result, it had paid AVX $1.34 million more than it was entitled to receive. See id. ¶ 32. In addition, the IRS discovered that in 2017 it had refunded roughly $60,000 in excessive deficiency interest. See id. ¶ 33.[7] When the IRS issued the additional refund payments in 2020, it withheld $1.4 million from them to offset the overpayment interest it erroneously

---

[5] These amounts also reflected more recent adjustments to AVX's refund claims based on information from the 2016 tax year. Answer ¶ 14; see also Compl. Ex. 4 at 3.

[6] AVX included Exhibit 4 with its complaint. See Compl. Ex. 4, ECF No. 2-4. That filing, however, was incomplete. See Answer ¶ 15. AVX later replaced its original filing with an updated exhibit that includes more details about AVX's refunds. See Am. Doc., ECF No. 23. The Court will cite this latest filing as Exhibit 4 to AVX's complaint.

[7] Deficiency interest accrues on "any amount of tax" that "is not paid on or before the last date prescribed for payment." 26 U.S.C. § 6601(a); see also 26 U.S.C. § 6621(a)(2) (establishing the interest rate on underpayments).

3

provided AVX in 2017 as well as the excess deficiency interest it had refunded. Id. ¶¶ 20–22, 26–28; Compl. ¶¶ 18, 20–22, 26–28.

The 2020 refund payments totaled $1,266,105.00 for 2007 and $1,940,878.16 for 2008, as set forth in the table below:

|  | Tax Year 2007 | Tax Year 2008 |
|---|---|---|
| Additional Allowed Amounts | $2,421,197 | $2,193,522 |
| Excess Overpayment Interest Offset | $1,108,538 | $235,382 |
| Deficiency Interest Offset | $46,554 | $17,262 |
| Total 2020 Refund | $1,266,105 | $1,940,878 |

Compl. ¶¶ 14, 16; id. Ex. 4 at 2–3; Answer ¶¶ 14, 16, 21, 27; Def.'s Cross-Mot. App. at 5, 8, 9–12.

### III.   This Action

In November 2021, AVX filed the complaint in this case. Compl. at 8. Its complaint requested a refund of the $1.4 million that the IRS withheld in 2020. Id. ¶¶ 20–24, 26–30, Prayer for Relief. The government answered in April 2022 and admitted that the IRS offset that amount against AVX's 2020 refunds to recover the excess overpayment interest the IRS had paid in error, and the excess deficiency interest it had refunded in 2017. Answer ¶¶ 21–22, 27–28.

In May 2022, AVX moved for judgment on the pleadings. See Pl.'s Mot. for J. on Pleadings ("Pl.'s Mot."), ECF No. 18. Relying on the PG&E decision, AVX argues that the Internal Revenue Code's two-year statute of limitations on suits to recover erroneous refunds barred the IRS from reducing AVX's 2020 refunds to recover the $1.34 million in overpayment interest that the IRS paid it three years earlier. Id. at 1–2, 4–7.[8]

---

[8] As noted, AVX sought to recover $1.4 million in its complaint. Compl. ¶ 1. That amount included both the offsets for the excessive overpayment interest that the IRS paid AVX in 2017 and the offsets for the excess deficiency interest refunded to AVX that year. Answer ¶¶ 21–22, 27–28, 32–33, 36–37. In its motion for judgment on the pleadings, AVX no longer claims that the offsets for the excess deficiency interest refunded to it in 2017 were barred by the statute of limitations and so requests a slightly lower award of $1.34 million. See Pl.'s Mot. at 4–7. For the reasons set forth below in the Discussion at II.C., the Court will grant the government's motion for judgment on the pleadings as to the portion of AVX's claim that challenges the offsets imposed for the excess deficiency interest.

4

The government filed a cross-motion for judgment on the pleadings in July 2022. See Def.'s Resp. to Pl.'s Mot. & Def.'s Cross-Mot. for J. on Pleadings ("Def.'s Cross-Mot."), ECF No. 26. It claims that this case is factually distinguishable from PG&E. Id. at 10–13. Therefore, it says, the court of appeals' decision did not prohibit the IRS from exercising its common-law right of offset to recover the excessive interest payments after the statute of limitations had run by offsetting that amount against AVX's 2020 refunds. Id. at 10–16, 18. In addition, it contends that the common-law right of recoupment also allowed the IRS to recover the excessive interest payments. Id. at 13–14, 16–17.

In September 2022, AVX filed its reply in support of its motion and its response to the government's cross-motion. See Pl.'s Resp. to Def.'s Cross-Mot. ("Pl.'s Resp."), ECF No. 29. The government filed its reply in October 2022. See generally Def.'s Reply in Support of its Cross-Mot. ("Def.'s Reply"), ECF No. 33.

The Court held an oral argument on the parties' cross-motions on March 16, 2023. See Order, ECF No. 35.

## DISCUSSION

**I.      Standards for Judgment on the Pleadings**

Under Rule 12(c) of the Rules of the Court of Federal Claims ("RCFC"), parties may move for judgment on the pleadings "[a]fter the pleadings are closed." A party moving for judgment on the pleadings may prevail on its motion "where there are no material facts in dispute and the [party] is entitled to judgment as a matter of law." N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994).

A defendant may use a motion for judgment on the pleadings to challenge expressly the sufficiency of a complaint under RCFC 12(b)(6). RCFC 12(h)(2). Under RCFC 12(b)(6), a complaint is subject to dismissal "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To avoid dismissal on this basis, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court considering a defendant's motion for judgment on the pleadings likewise must accept as true the plaintiff's factual allegations "and make all reasonable inferences in favor of the plaintiff." Agility Pub. Warehousing Co. K.S.C.P. v. United States, 969 F.3d 1355, 1364 (Fed. Cir. 2020) (quoting Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009)); see also id. ("A 'court should only grant a defendant's motion for judgment on the pleadings if the defendant is clearly entitled to judgment on the basis of the facts as the plaintiff has presented them.'" (quoting Owen v. United States, 851 F.2d 1404, 1407 (Fed. Cir. 1988))).

5

**II.    Merits**

    **A.    <u>Right of Offset and Pacific Gas & Electric</u>**

As noted, AVX contends that the two-year statute of limitations set forth at 26 U.S.C. §§ 7405 and 6532(b) precluded the IRS from offsetting the excessive overpayment interest that it paid AVX in 2017 against the amount of the refund otherwise due AVX and paid in 2020. Pl.'s Mot. at 1–2, 4–7. It argues that this result is compelled by the court of appeals' decision in PG&E. Id. The Court agrees.

In PG&E, the taxpayer filed a refund request for tax year 1982. 417 F.3d at 1377. The IRS granted the request in 1988. Id.  In the course of preparing the refund payment, however, the IRS miscalculated and overstated the amount of overpayment interest the taxpayer was entitled to receive under 26 U.S.C. § 6611. Id. As a result of the IRS's error, the taxpayer received a refund payment in 1988 that included an excessive amount of overpayment interest. Id.

Sometime thereafter, the taxpayer filed other refund claims for tax year 1982. Id. The IRS again found the taxpayer entitled to a refund. See id. As it prepared the refund payment, however, the IRS discovered the error it made when calculating the amount of overpayment interest to be included with the 1988 refund. Id. When the IRS issued the refund payment, in 1992, it reduced the amount of the refund by the amount of the excess interest payment that it had provided the taxpayer with the 1988 refund. Id.

The taxpayer in PG&E challenged the offset on the grounds that it was untimely because it was effected more than two years after receipt of the excessive interest payment in 1988. Id. at 1377–78. The Federal Circuit agreed. Id. at 1384. It held that the Internal Revenue Code's two-year statute of limitations on lawsuits to recover erroneous refunds also restricted the IRS's "ability to offset erroneously paid [overpayment] interest against a taxpayer's refund claim." Id.

In so ruling, the Federal Circuit distinguished a line of cases which recognize the IRS's right—without regard to the expiration of any applicable limitations period—to offset a tax liability against a refund otherwise due for the same tax year. Id. at 1379–83 (citing Lewis v. Reynolds, 284 U.S. 281 (1932); Dysart v. United States, 340 F.2d 624 (Ct. Cl. 1965); Fisher v. United States, 80 F.3d 1576 (Fed. Cir. 1996)). As the court of appeals explained in PG&E, the right of offset that emerged from these cases was based on the recognition that the IRS has no obligation to issue a refund when the taxpayer still owes taxes for the same tax year:

> The common thread in these cases is that the refund statute requires that there be an actual overpayment of tax to support a refund. There cannot be such an overpayment without taking into account any additional amount of assessable tax, interest, or penalty owed by the taxpayer even though such

an amount could not be assessed and collected because of the running of
the statute of limitations.

Id. at 1381.

In PG&E, the court of appeals concluded that this longstanding rationale for permitting the IRS to employ offsets beyond the limitations period is not applicable where the IRS seeks to offset a debt that is "not a tax liability component or assessable." Id. When the IRS provides a taxpayer too much overpayment interest, the taxpayer owes the excess payment amount to the government "because they have been unjustly enriched by it, not because they have not paid their taxes." Id. at 1382 (quoting O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995)). Offsetting excessive overpayment interest against a tax refund, the court observed, was instead "akin to a cause of action by the government in a suit to recover the erroneous interest." Id. at 1384; see also 26 U.S.C. § 7405. "Thus," the Federal Circuit held, "the [IRS's] ability to offset erroneously paid [overpayment] interest against a taxpayer's refund claim in the same tax year is subject to the same statute of limitations that applies to suits" under section 7405. PG&E, 417 F.3d at 1384; see also 26 U.S.C. §§ 6532(b), 7405.

In its cross-motion, the government contends that the Federal Circuit's reasoning in PG&E was flawed in several respects. Def.'s Cross-Mot. at 14–16. But as the government knows, this Court is bound by decisions of the court of appeals. See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) ("[A] circuit court decision, if applicable, controls until the circuit court overrules it en banc."). Accordingly, the Court will not entertain the government's arguments that PG&E was wrongly decided.

The government also contends that PG&E is not controlling because of procedural differences between the refund payments at issue in this case and those at issue there. Def.'s Cross-Mot. at 10–13. It observes that the 1988 and 1992 refunds in PG&E originated from separately filed refund claims covering the 1982 tax year. Id. at 10–12; see also PG&E, 417 F.3d at 1377. Further, in PG&E, according to the government, the IRS "fully resolved" the first refund claims in 1988. Def.'s Cross-Mot. at 11. The taxpayer later filed "additional refund claims," the government notes, and, in 1992, the IRS issued a "subsequent refund" against which it offset the excessive overpayment interest from four years earlier. Id. at 12 (quoting PG&E, 417 F.3d at 1377–78).

In contrast, the government argues, AVX filed a single refund claim for tax year 2007 and a single refund claim for 2008. Id.; see also Compl. Ex. 1 at 2–3; Compl. Ex. 2 at 2–3. Also, in this case, according to the government, the payments the IRS made in 2017 were only "interim" in nature, and AVX's 2007 and 2008 claims were not finally resolved until 2020. Def.'s Cross-Mot. at 12. The government characterizes the 2017 and 2020 payments as "merely components of the same, ongoing refund claim[s]." Id. In that context, according to the government, "it would be illogical to bar the IRS from correcting errors made in processing th[ose] same claim[s]." Id. at 12–13.

7

AVX objects to the government's characterization of the 2017 refunds as only interim payments that did not resolve any part of AVX's claims. See Pl.'s Resp. at 12–15. It contends that, as in PG&E, the IRS's first refund payments in 2017 fully resolved the corresponding components of AVX's refund claims. Id. at 14; see also PG&E, 417 F.3d at 1377. And in any event, AVX observes, the differences the government has identified do not appear to have any bearing on the applicability of the reasoning set forth in PG&E. Pl.'s Resp. at 4–6.

The Court agrees that the distinctions the government would draw between the taxpayer's refund claims in PG&E and AVX's claims seem contrived. But more to the point, PG&E did not turn on the manner in which the refund claims in that case were presented or resolved. See PG&E, 417 F.3d at 1378–84. The Federal Circuit's decision centered on the "nonassessable nature" of the overpayment interest that the IRS paid the taxpayer in 1988 when it granted the first of the refund claims. See id. at 1381–83. The distinctions the government has identified are therefore immaterial and do not compel a result here that would be different from the one that obtained in PG&E.

### B.     Right of Recoupment

The government argues in the alternative that the IRS's retention of the excess overpayment interest through an offset against refunds due AVX constituted an exercise of the "common-law right of recoupment." Def.'s Cross-Mot. at 14. This argument is available to the government here because the court of appeals expressly declined to address the applicability of the equitable recoupment doctrine in PG&E. See 417 F.3d at 1385 n.10 (explaining that the right of recoupment was not before the Federal Circuit because it "does not appear to have been raised below, and, in any event, it was not decided by the Court of Federal Claims").

Recoupment is an offset involving debts "arising out of the same transaction." Reiter v. Cooper, 507 U.S. 258, 264 (1993); see also Dysart, 340 F.2d at 627 (noting that a party can assert the right of recoupment only "where a single or same transaction is involved"); Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 299 (1946) (stating that the right of recoupment "has never been thought to allow one transaction to be offset against another"). Because the right "is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded," it is not barred by statutory limitations periods "so long as the main action itself is timely." Bull v. United States, 295 U.S. 247, 262 (1935).

In this case, AVX filed refund claims based on the fact—not disputed by the government—that it overpaid its taxes for 2007 and 2008. See Compl. Ex. 1 at 2–3; id. Ex. 2 at 2–3; see also Answer ¶¶ 13–14, 31–34; Compl. Ex. 4 at 2–3. The government's assertion that it is entitled to recover the excess statutory interest it paid AVX in 2017 is not a defense to AVX's claim that it overpaid its tax liabilities. Nor were the erroneous calculation of overpayment interest and the events that formed the basis for AVX's refund claims part of the same transaction.

The Supreme Court has cautioned that in tax cases the right of recoupment is narrowly applied. See Rothensies, 329 U.S. at 299–301 (discussing "the limited scope given to recoupment in tax litigation"); see also Dysart, 340 F.2d at 629 (explaining that the Court in Rothensies "declare[d] that the doctrine of equitable recoupment should not be broadly applied"). In fact, since the Supreme Court first recognized the right in tax cases nearly 80 years ago, it has upheld its application in only two such cases: Bull v. United States, 295 U.S. 247 (1935), and Stone v. White, 301 U.S. 532 (1937).

In both Bull and Stone, the Court found the doctrine applicable where "[a] single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due." Rothensies, 329 U.S. at 300.[9] "[T]hese facts," the Court wrote in Rothensies, "are the only ones in which [the right of recoupment] has been applied by this Court in tax cases." Id.; see also United States v. Dalm, 494 U.S. 596, 605 n.5 (1990) (reiterating that "[s]ince Bull, we have emphasized that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories").

In this case, as noted above, the government's claimed right to recoup the interest overpayments does not involve any "taxable event" or taxable transaction at all. See Rothensies, 329 U.S. at 300. It arises out of the IRS's miscalculation of the amount of overpayment interest due AVX under 26 U.S.C. § 6611. See Answer ¶¶ 2, 13, 32. The claim is not based on any obligation imposed on AVX under the Internal Revenue Code. It does not involve the taxation of a single transaction based on two inconsistent theories.

In short, this case does not fit into the limited category of tax cases for which the right to equitable recoupment has been recognized. See Rothensies, 329 U.S. at 299–300. The government's contention, therefore, that the doctrine of equitable recoupment permitted the IRS to recover the excess overpayment interest, is without merit.

---

[9] In Bull, for example, the executor of a deceased business partner's estate paid estate tax on the partner's share of profits following his death. 295 U.S. at 251–52. Several years later, the government determined that it should have taxed the profits as income, and it assessed an income tax deficiency, but without crediting the amount the executor had already paid in estate tax. Id. at 252–53. The Court held that the executor could recoup the estate tax in an action concerning the income tax, even though the limitations period on claiming a refund for the estate tax had expired. Id. at 260–63. This was so, the Court explained, because the estate and income taxes arose "out of the same transaction" that served as the basis for the timely litigation concerning the income tax, i.e., the executor's receipt of the decedent's share of partnership profits. Id. Further, the partnership profits were taxed on inconsistent theories (in one instance the shares of profit were subject to estate tax and in the other they were subject to income tax). See Rothensies, 329 U.S. at 300.

### C. The IRS's Recovery of Deficiency Interest

In 2017, the IRS, in addition to miscalculating the overpayment interest owed to AVX, also refunded too much deficiency interest to AVX. Answer ¶¶ 2, 13, 32–33; see also Def.'s Cross-Mot. at 7–8. The IRS discovered its error while processing AVX's 2020 refunds. Answer ¶ 35. As it did with the excessive overpayment interest, the IRS offset the erroneously refunded deficiency interest—roughly $47,000 for 2007 and $17,000 for 2008—against AVX's 2020 refunds. Id. ¶¶ 21–22, 27–28, 35–37; see also Def.'s Cross-Mot. at 7–8.

These offsets were not subject to the statute of limitations because deficiency interest is part of a taxpayer's tax liability. See PG&E, 417 F.3d at 1381–83; see also Fisher, 80 F.3d at 1580 ("The Internal Revenue Code treats interest on a tax liability as an integral part of the liability itself."). Deficiency interest is therefore "taken into account in determining whether an overpayment exists" and whether the IRS in fact owes a refund. PG&E, 417 F.3d at 1383. Thus, the IRS may offset deficiency interest against a taxpayer's refund claim for the same tax year even though the statute of limitations prohibits the IRS from assessing the outstanding interest. Id. at 1381–83; see also Fisher, 80 F.3d at 1580 ("We see no convincing reason why, for purposes of offset, [deficiency] interest should be treated any differently than other components of tax liability.").

### CONCLUSION

For the foregoing reasons, AVX's motion, ECF No. 18, is **GRANTED**. The government's cross-motion, ECF No. 26, is **GRANTED** as to the deficiency interest that the IRS offset against AVX's 2020 refunds. It is otherwise **DENIED**. The parties shall file a joint report within 20 days stating the amount of the judgment that should be entered consistent with the foregoing.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge
